[**Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Disciplinary Counsel v. Catalfina,* **Slip Opinion No. 2016-Ohio-5126.**]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2016-OHIO-5126

DISCIPLINARY COUNSEL *v.* CATALFINA.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Catalfina,* Slip Opinion No. 2016-Ohio-5126.]**

*Unauthorized practice of law—Purporting to negotiate Social Security disability claims—Agreeing to represent client in divorce case—Collecting payments for purported legal representation and filing fees—Injunction issued and civil penalty imposed.*

(No. 2015-2078—Submitted February 10, 2016—Decided July 28, 2016.)

ON FINAL REPORT by the Board on the Unauthorized Practice of Law of the Supreme Court, No. UPL 13-05.

_____

**Per Curiam.**

{¶ 1} On July 18, 2013, relator, disciplinary counsel, filed with the Board on the Unauthorized Practice of Law a complaint against respondent, Kelly

Catalfina ("Catalfina") of Largo, Florida.[1]  The three-count complaint alleged that Catalfina, who is not licensed to practice law in Ohio, engaged in the unauthorized practice of law by holding herself out to three individuals as an Ohio attorney. Catalfina initially sought and was granted leave to retain counsel and file an answer. However, to date she has not filed an answer or retained counsel.  Following numerous attempts to engage Catalfina, relator filed a motion for default judgment on July 1, 2014, but Catalfina again failed to respond.  The panel of the board that was assigned to hear this matter granted the motion for default judgment as to the first two counts but dismissed the third count for insufficient evidence.  No objections were filed.

{¶ 2} The board found that Catalfina engaged in the unauthorized practice of law  and recommends that we issue an order prohibiting her from engaging in the unauthorized practice of law in the future and imposing a civil penalty of $6,000 pursuant to Gov.Bar R. VII(8)(B).  We agree with the board's finding that Catalfina engaged in the unauthorized practice of law and that a civil penalty is appropriate under these circumstances.

### Catalfina's Conduct

*The Kellett Matter*

{¶ 3} Lisa Kellett retired early from the United States Postal Service ("USPS") due to a chronic illness.  She applied for early USPS retirement benefits and for Social Security disability benefits, but the Social Security Administration denied her application.  Her husband and Catalfina's husband, Christian Catalfina, worked together, and Christian had previously told Kellett's husband that his wife was an attorney and could assist the Kelletts with any legal problems they might have.

---

[1] Catalfina has also used the names Kelly Fligor, Kelly Foxall, and Kelly Williamson.

**{¶ 4}** On September 8, 2011, the Kelletts met with Catalfina at her home. At Catalfina's request, the Kelletts paid her $1,000 so that she could represent Lisa Kellett. Catalfina also told the Kelletts that if they referred five individuals to her, she would refund their money.

**{¶ 5}** Kellett regularly communicated with Catalfina regarding her case, mostly through text messages. Over the next several months, Catalfina told Kellett that her case was progressing as expected and that everything was fine. However, although Kellett asked several times, Catalfina never produced documentation of the progress of the Social Security matter. And during this time, Catalfina led Kellett to believe that she was an attorney by referring to her work on other cases, including once having had "a 'long and grueling' day in court." Also during this period, Catalfina gave Kellett a business card suggesting that Catalfina had expertise in "Senior Care Consulting," "Estate Planning," "Medicare/Medicaid," and "Wills & asset Protection."

**{¶ 6}** In December 2011, Catalfina informed Kellett that she "had been approved for Social Security benefits" after a hearing, but Catalfina continued to ignore Kellett's concerns about the lack of documentation concerning her case. On January 5, 2012, Kellett informed Catalfina via text message that she was going to stop pursuing her Social Security claim, and she asked for all her personal files, including correspondence held by Catalfina. Shortly thereafter, Kellett requested the same documents in a letter via regular mail and e-mail. Upon calling the Social Security Administration herself, Kellett discovered that Catalfina had never been listed with it as her attorney or representative and that no appeal had been filed in her case. Kellett also called a bar association, which informed her that Catalfina was not an attorney. Kellett's husband acknowledged in a letter to relator that toward the end of their relationship, Catalfina offered to refund the $1,000 that Kellett had paid her; however, though Kellett ultimately requested it, Catalfina never refunded the money.

*The Gall Matter*

**{¶ 7}** Jason Gall also worked with Christian Catalfina, and Christian had similarly told Gall that his wife was an attorney and that she could assist him with any legal problems. Around November 2011, Gall informed Christian that he was having problems with his uncontested divorce after his wife moved to Florida and failed to return documents that he had downloaded from the Internet and sent for her to sign. Gall gave Christian the papers to give to Catalfina and $150 for a court filing fee.

**{¶ 8}** Shortly before Thanksgiving 2011, Catalfina called Gall and told him that she had filed his divorce paperwork and that a hearing had been scheduled for December. She also said that she had sent his wife a form that she needed to sign. Gall's wife, however, never received the form, although Catalfina claimed that she had sent it multiple times. Gall ultimately took care of getting his wife's signature on the form himself.

**{¶ 9}** Gall called the court about the December hearing and learned that it was never scheduled and, moreover, that no filing had been made in the case. Soon thereafter, Catalfina stopped responding to Gall's e-mails, but eventually she responded that she was waiting for the court to schedule a new hearing date. By February 2012, neither Gall nor his wife had heard anything about their divorce. While researching Catalfina, they learned that she was not an attorney and that she still had not made any filing in their case. Gall's wife sent an e-mail to Catalfina, and shortly thereafter, Catalfina sent Gall an e-mail stating that she no longer could represent him.

**Respondent Engaged in the Unauthorized Practice of Law**

**{¶ 10}** This court has original jurisdiction to define and regulate the practice of law in Ohio, including the unauthorized practice of law. *Cleveland Metro. Bar Assn. v. Davie*, 133 Ohio St.3d 202, 2012-Ohio-4328, 977 N.E.2d 606, ¶ 18, citing Ohio Constitution, Article IV, Section 2(B)(1)(g). "The unauthorized practice of

law includes the provision of legal services for another by a person who is neither admitted to the practice of law pursuant to Gov.Bar R. I nor certified for the limited practice of law pursuant to Gov.Bar R. II." *Disciplinary Counsel v. Casey*, 138 Ohio St.3d 38, 2013-Ohio-5284, 3 N.E.3d 168, ¶ 9, citing *Geauga Cty. Bar Assn. v. Haig*, 129 Ohio St.3d 601, 2011-Ohio-4271, 955 N.E.2d 352, ¶ 2, and Gov.Bar R. VII(2)(A)(1).

{¶ 11} Catalfina has never been licensed to practice law in Ohio. We have previously held that "one who purports to negotiate legal claims on behalf of another and advises persons of their legal rights * * * engages in the practice of law." *Cleveland Bar Assn. v. Henley*, 95 Ohio St.3d 91, 92, 766 N.E.2d 130 (2002). Also, representing that one is authorized to practice law in Ohio without such authorization, by directly or indirectly creating the misimpression of that authority through manipulation of credentials and strategic silence, constitutes the unauthorized practice of law. *Casey* at ¶ 11, citing *Cleveland Bar Assn. v. Misch*, 82 Ohio St.3d 256, 261, 695 N.E.2d 244 (1998). Thus, by purporting to negotiate Social Security disability claims on behalf of Lisa Kellett, accepting money to do so, and holding herself out as an attorney to Kellett, Catalfina engaged in the unauthorized practice of law. And by holding herself out as an attorney to Jason Gall, indicating that she would represent him in his divorce and collecting $150 from him purportedly for filing fees, Catalfina engaged in the unauthorized practice of law.

### Sanction

{¶ 12} Because we find that Catalfina engaged in the unauthorized practice of law, we accept the board's findings and adopt its recommendation to enjoin Catalfina from engaging in the unauthorized practice of law in the future.

{¶ 13} The board considered the factors set forth in Gov.Bar R. VII(8)(B) and UPL Reg. 400(F) in determining whether to recommend a penalty. It found that Catalfina had not fully cooperated with the investigation and resolution of this

matter and that the two violations were flagrant, in that she took money from her clients for services she never provided and was never authorized to provide. The board found no mitigating factors and recommended that we impose a $6,000 civil penalty upon Catalfina, $3,000 for each of the Kellett and Gall matters. Although Catalfina's acts of misconduct were relatively few, they were flagrant and caused harm to her clients. Therefore, we find this penalty appropriate and accept the board's recommendation.

**{¶ 14}** Kelly Catalfina is enjoined from engaging in the unauthorized practice of law, including performing legal services or directly or indirectly holding herself out to be authorized to perform legal services in the state of Ohio. We also impose a civil penalty against Catalfina in the amount of $6,000—$3,000 for each of the Kellett and Gall matters. Costs are taxed to Catalfina.

Judgment accordingly.

O'CONNOR, C.J., and PFEIFER, O'DONNELL, LANZINGER, KENNEDY, FRENCH, and O'NEILL, JJ., concur.

_____

Scott J. Drexel, Disciplinary Counsel, and Karen H. Osmond, Assistant Disciplinary Counsel, for relator.

_____